UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMAN AMADOR URBIETA NIETO,<br><br>Petitioner,<br><br>v.<br><br>JEREMY CASEY, Senior Warden, Imperial Detention Center, *et al.*,<br><br>Respondents. | Case No.:  26-cv-0186-GPC-AHG<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

On January 12, 2026, Petitioner Roman Amador Urbieta Nieto ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from custody. ECF No. 1 ("Pet."). Respondents filed a return to the petition on January 16, 2026. ECF No. 3 ("Ret."). For the following reasons, the Court **GRANTS** the petition for a writ of habeas corpus. The Court also **VACATES** the hearing set for January 23, 2026.

## BACKGROUND

Petitioner is a Mexican national who entered the United States over 20 years ago. Pet. ¶¶ 5, 19. On September 8, 2025, Petitioner was detained by Respondents at the Imperial Regional Detention Center and was placed in removal proceedings pursuant to 8 U.S.C. § 1229a. *Id*. He has remained in custody since that time. *Id*. ¶ 1. On January 7, 2026,

an immigration judge found that it lacked jurisdiction to consider Petitioner's request for custody redetermination. ECF No. 1-3. The immigration judge also issued an alternative finding, which granted a bond of $2000 if the court did have jurisdiction. *Id*.

On January 12, 2026, Petitioner filed a petition for writ of habeas corpus. ECF No. 1. The Petition asserts that Petitioner's detention violates the Immigration and Nationality Act ("INA") and the judgement in *Bautista v. Santacruz,* No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Pet. ¶¶ 26-30. Thus, Petitioner requests a writ of habeas corpus ordering Petitioner's release, an award of attorneys' fees to Petitioner, and any other relief the Court deems just and proper.

## DISCUSSION

### I.  Legal Standard

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A habeas petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

### II.  Merits: Whether the INA Subjects Petitioner to Mandatory Detention

The habeas petition raises an issue of statutory construction as to whether the Immigration and Nationality Act ("INA") subjects all applicants for admission, even non-

citizens who entered without admission or inspection and have resided in the United States for years without lawful status, to mandatory detention for the duration of their immigration proceedings. If so, an immigration judge would lack the authority to entertain a bond request. Petitioner contends that he is entitled to a bond hearing under 8 U.S.C. § 1226(a). Respondents have also acknowledged that pursuant to *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) Petitioner is detained under 8 U.S.C. § 1226(a) and is entitled to a bond hearing. Ret. at 1.[1] However, Respondents reserve the right to supplement its response in the event of a stay of enforcement of the *Bautista* final judgment, appellate relief, or a change in DHS policy. *Id*. Given the reservation, the Court will conduct a full analysis of the issue.

**1.   U.S.C. § 1225(b)(2)(A) and § 1226(a)**

Noncitizens are detained during removal proceedings under two statutes: 8 U.S.C. §§ 1225 and 1226. Section 1225 governs inspection by immigration officers and expedited removal proceedings for "applicants for admission" who are defined as an "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). An applicant for admission "seeking admission or readmission to or transit through the United States" is inspected by immigration officers. *Id*. § 1225(a)(3). If an applicant is deemed inadmissible after inspection, the applicant will be subject to expedited removal "without further hearing or review," unless an intention to apply for asylum is indicated where the applicant would then be referred for a credible fear interview. *Id*. § 1225(b)(1)(A)(i)-(ii). For other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." *Id*. § 1225(b)(2)(A). A limited exception provides that a "noncitizen detained

---

[1] Page numbers are based on the CM/ECF pagination.

under [s]ection 1225(b)(2) may be released if she is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018). Otherwise, "detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lepe v. Andrews*, -- F. Supp. 3d --, 2025 WL 2716910, at *3 (E.D. Cal. Sept. 23, 2025) (internal quotation marks omitted) (quoting *Lopez Benitez v. Francis*, -- F. Supp. 3d --, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025)).

In contrast, § 1226 addresses apprehension and detention of aliens and generally governs the process of arresting and detaining aliens present in the United States, including aliens who were inadmissible at the time of entry. *Jennings*, 583 U.S. at 288. Section 1226 states, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(c), however, "carves out a statutory category of aliens who may not be released under § 1226(a)," which focuses on those who are inadmissible or deportable because of certain crimes. *Jennings*, 583 U.S. at 296-97; 8 U.S.C. §§ 1226(a), (c).

"When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," *Rodriguez Diaz*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)), where the noncitizen "must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). After a decision has been made, the noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 236.1(d)(1). At the bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re Guerra*, 24 I. & N.

Dec. 37, 38 (BIA 2006)). "Section 1226(a), therefore, establishes a discretionary detention framework." *Otilio B.F. v. Andrews*, -- F. Supp. 3d --, 2025 WL 3152480, at *5 (E.D. Cal. Nov. 11, 2025) (citation and internal quotation marks omitted).

### 2. Statutory Interpretation of § 1225(b)(2)

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks and citation omitted). In doing so, "a court 'must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) (citation omitted).

#### i. Plain Meaning of § 1225(b)(2)

The dispute rests on whether § 1225(b)(2) applies to Petitioner. Section 1225(b)(2) provides, in pertinent part, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . ." 8 U.S.C. § 1225(b)(2) (emphasis added). Petitioner argues that his proceedings should be governed by § 1226(a). Pet. ¶ 27.

The term "seeking admission" is not defined under § 1225. As many cases in this District and this Circuit have found, "seeking admission" is best understood to require "an affirmative act such as entering the United States or applying for status." *See Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *see also Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question

has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice."). Here, Petitioner was not "seeking admission" within this interpretation. He was arrested in the interior of the United States, not while presenting himself at the gate of entry to attempt to apply for admission.

### ii. Government's Longstanding Practice

The Court's interpretation is further supported by the enforcement agency's past interpretation of §§ 1225(b) and 1226. Prior to enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") governing expedited and regular removal proceedings, handling of asylum claims, and other activities involving the apprehension, detention, hearing of claims and ultimately the removal of inadmissible and deportable aliens, the term "seeking admission" was confined to aliens arriving at the port of entry under the prior § 1225. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 223 (BIA 2025). After the IIRIRA was enacted, DHS's predecessor agency, the U.S. Immigration and Naturalization Service ("INS"), "detained arriving aliens" under § 1225(b), but "[n]oncitizens who were present without admission were detained under the discretionary rules of 8 U.S.C. § 1226(a)." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312-01, 10323, 1997 WL 93131 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). In arriving at this application, the INS did not find it necessary to interpret "seeking admission."

This longstanding practice from 1997 through 2025 requires the Court to afford due respect to Executive Branch interpretations of §§ 1225(b) and 1226(a). *See Edwards' Lessee v. Darby*, 25 U.S. 206, 210 (1827) ("In the construction of a doubtful and ambiguous

law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").[2] The U.S. Supreme Court in *Loper Bright Enters. v. Raimondo* observed that "[s]uch respect was thought especially warranted when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." 603 U.S. 369, 386 (2024). That is because "the longstanding 'practice of the government, [ ] can inform [a court's] determination of 'what the law is[.]'" *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014) (first quoting *McCulloch v. Maryland*, 17 U.S. 316, 401 (1819); then quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)).

On July 10, 2025, a U.S. Customs and Border Protection Memorandum was issued titled "Detention of Applicants for Admission." *See* https://www.cbp.gov/document/foia-record/detention-applicants-admission. The Memorandum indicated that DHS, in coordination with the DOJ, "revisited its legal position" on the INA and determined that § 1225, rather than § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the U.S. "who has not been admitted . . . whether

---

[2] *Hurtado* noted that respect for this longstanding practice initiated by INS in 1997 was unwarranted because the policy only applies to a "doubtful and ambiguous law" and finding that the INA text is clear and not ambiguous. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 226 (BIA 2025). Yet the panel acknowledged that the issue of statutory construction of the INA is complicated by a patchwork of statutes implemented at different times and intended to address different issues. *Id*. at 227. Here, Petitioner claims that the statute is plain and that its interpretation is the reasonable one. Yet interpretation of § 1225(b)(2) is complicated due to the complex set of legal provisions and the term "seeking admission" is surrounded by enough ambiguity that giving weight to the "longstanding" application of this interpretation is warranted. The Court also takes into account the congressional failure to revise or repeal the agency's interpretation. *See N.L.R.B. v. Bell Aerospace Co. Div. of Textron Inc*., 416 U.S. 267, 274-75 (1974). Congress would have had the opportunity to do so when it enacted the Laken Riley Act which created the § 1226(c) mandatory detention provisions for certain criminal aliens.

or not at a designated port of arrival." *Id.* It stated that "it is the position of DHS that applicants for admission are subject to mandatory detention under INA § 235(b) and may not be released from DHS custody except by INA § 212(d)(5) parole." *Id.* The Memorandum further provides that for custody purposes, "these aliens are now treated in the same manner that 'arriving aliens' have historically been treated. The only aliens eligible for a custody determination and release on recognizance, bond, or condition parole under INA § 236(a) are aliens admitted to the United States and chargeable with deportability under INA § 237, with the exception of those subject to mandatory detention under INA § 236(c)." *Id.* This new legal position was provided to ICE employees in an "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Bethancourt Soto v. Soto*, --F. Supp. 3d--, 2025 WL 2976572, at *2 n.1 (D.N.J. Oct. 22, 2025) (quoting *Vasquez v. Feeley*, --F. Supp. 3d--, 2025 2676082, at *5 n.2 (D. Nev. Sept. 17, 2025)).

The Memorandum does not address the "seeking admission" language that is at core of the dispute, nor did it justify the changed position given the prior longstanding application of the statute. In fact, the Government has acknowledged in other recent cases that prior to the issuance of the July 10, 2025 Memorandum, a non-citizen who had lived here at the time of the detention would have been eligible for a bond hearing. *See generally Zumba v. Bondi*, Civ. No. 25-cv-14626 (KSH), 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025) ("Respondents readily admit that if petitioner had been arrested on the basis of her inadmissibility prior to July 8, 2025, she would have been discretionarily detained under 8 U.S.C. § 1226(a) and eligible for a bond hearing.").

Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the Court is further persuaded that "seeking admission" applies to arriving noncitizens and not those who entered without inspection and have lived in the United States for years.

///

### iii.   Statutory Canons of Interpretation

In addition, a potential new interpretation of § 1225(b)(1) "violates the rule against surplusage and negates the plain meaning of the text." *Quijada Cordoba v. Knight*, --F. Supp. 3d--, 2025 WL 3228945, at *6 (D. Id. Nov. 19, 2025) (citations omitted). First, the "interpretation of 'seeking admission' as [equivalent to "applicant for admission"] would seemingly render that phrase mere surplusage, such that the language could be deleted while retaining the same statutory meaning." *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346, at *3 (S.D. Cal. Oct. 27, 2025). This interpretation runs counter to the interpretative canon that effect should be given to all statutory provisions. Therefore, the more apt interpretation in alignment with the canon must, instead, account for "seeking admission" as an additional requirement to those identified as "applicants for admission."

Second, that "new" interpretation blurs the lines between § 1225(b) and § 1226(a). As made clear in *Jennings*, "U.S. immigration law authorizes the government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289. The Supreme Court thereby interprets § 1225(b) to apply to "aliens seeking admission to the country," while § 1226(a) applies to "aliens already in the country." *Jennings*, 583 U.S. at 289. Here, Petitioner is sensibly characterized as a noncitizen "already in the country" rather than one "seeking admission." Indeed, "[t]he overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Lopez*, 2025 WL 3005346, at *4 (citations omitted).

Third, § 1226 already provides an exception to its rule that the Attorney General may set bond or release an alien on conditional parole, specifically under subsection (c). Enacted by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), § 1226(c)(1)(E) requires mandatory detention for people who are inadmissible under §§ 1182(a)(6)(A), (6)(C), or (7) *and* charged with certain crimes. 8 U.S.C. § 1226(c)(1)(E). Beyond the fact that Petitioner doesn't satisfy these requirements, a new "interpretation of Section 1225(b)(2)(A) would seemingly render the foregoing language from Section 1226(c) a nullity." *Lopez*, 2025 WL 3005346, at *4 (citations omitted). Specifically, "if § 1225(b)(2) already encompassed all inadmissible noncitizens, there would be no need to pass an amendment that required detention for those who are inadmissible under the same statutes and are being charged with specific crimes." *Medina-Ortiz v. Noem*, No. 25-cv-02819-DMS-MMP, at *5 (S.D. Cal Oct. 30, 2025). Such an "interpretation would render the Laken Riley Act, 'superfluous'" and, therefore, should not be accepted. *Id*.

In sum, the Court concludes that Petitioner is not "seeking admission" under § 1225(b)(2) and that an immigration judge retains authority to grant conditions of bail under §1226(a). Accordingly, the Court finds that Petitioner is being unlawfully detained under § 1225(b)(2) and is entitled to a bond hearing.

### III. Remedy

Given the above, Petitioner is entitled to a bond hearing. However, while an immigration judge denied Petitioner's initial request for custody determination under *Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the judge simultaneously issued alternative findings if the immigration court did have jurisdiction. ECF No. 1-3. Specifically, the judge alternatively granted a $2,000 bond and listed several conditions for release. *Id*.

As has been held in this district:

> [G]iven Respondents' "weighty" interest in the "efficient administration of the immigration laws," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require

> Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [previous] hearing. Nor would this remedy prejudice Respondents. First, they have not contested the immigration judge's findings or argued that Petitioner poses a flight risk or danger to the community. Second, should Respondents wish to make those arguments, they may do so by appealing the immigration judge's decision to the Board of Immigration Appeals.

*Ruiz v. Noem*, No. 3:25-CV-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025).

Accordingly, the Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy.

## CONCLUSION

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Court **ORDERS** Respondents immediately release Petitioner from custody, subject to a $2,000 bond and the conditions of release outlined by the immigration judge. Respondents are also **ORDERED** to **FILE** a Notice of Compliance within seven days of releasing Petitioner. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: January 16, 2026

Hon. Gonzalo P. Curiel
United States District Judge